

ENTERED
03/28/2017

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| MOTHERSHIP VENTURES , LLC § | CASE NO. 17-31776 |
| § | (Chapter 11) |
| § | |
| Debtor § | |

## ORDER AUTHORIZING USE OF CASH COLLATERAL

CAME ON for consideration the emergency motion of MOTHERSHP VENTURES, LLC (hereinafter referred to as the "Debtor"), Debtor and Debtor-in-Possession, for the preliminary and interim use of Cash Collateral, and this Court having considered the pleadings, the need for the relief and other factors has determined that such motion should be granted.

1. Subject to the terms and conditions of this Order and in accordance with the Budget attached hereto as Exhibit "A" ("Budget"), the Debtor is authorized to use cash collateral as that term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") solely in the amounts and solely for the purpose set forth in the Budget; provided, however, the Budget shall not be construed as permitting, nor include, payment of any prepetition unsecured creditors except as approved by the Court. The Debtor shall not, in the aggregate, exceed the projected aggregate expenses set forth in the operating budget by more than ten percent (10%). If the Debtor exceeds the expenditures allowed as set forth in the operating budget by more than said 10%, the "INTEGRITY BANK, ssb" Lender "shall" be allowed to seek ex parte relief from the automatic stay. The only issue that the court may consider at such a hearing is whether the Debtor complied with the

provisions of this paragraph. If the court finds that the Debtor failed to comply, the Lender shall receive relief from the automatic stay in order to exercise and enforce all of its rights to and interest in its collateral, cash collateral, and any other property of the estate on which the Lender holds a lien including Lender Collateral (defined below). The Debtor acknowledges that the operating budget does not allow for the accumulation of operating reserves other than those minimal reserves which are necessary for the reasonable operation of a real property of the size and type of that leased by the Debtor. ~~It is expressly understood between the Debtor and Lender that the budgetary restrictions hereunder do not encompass or restrict the Debtor from purchasing (post petition) food, beverages, and other goods and services that are necessary in the operation of the business for immediate and contemporaneous use. Such purchases may exceed the operating budget and may occur if necessary and shall not be a violation of this Order.~~

2. Pursuant to this Agreed Order, the Lender consents to the Debtor's use of Cash Collateral and the Debtor shall be authorized to use Cash Collateral as provided in this Order. In the event of a default by Debtor under the terms hereof, the Lender may revoke its consent to the use of Cash Collateral after five days' notice of default and right to cure given to the Debtor through its counsel by email (the "Notice"), and the provisions of this Order for use of Cash Collateral shall terminate automatically upon the expiration of five days after the transmission of the Notice.

3. As adequate protection of the interests of the Lender against diminution in value of its interests in the Cash Collateral, pursuant to section 361 and 363(e) and 363(c) of the Bankruptcy Code, the Debtor is authorized to grant, and upon entry of this Order, shall

be deemed to have granted to the Lender continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in, and replacement liens (the "Lender Adequate Protection Liens") on, any and all presently owned and hereafter acquired assets of debtor (including, without limitation, accounts receivable, sales receipts, unpaid credit card charges, general intangibles, all proceeds thereof and Cash Collateral) and all other assets of the Debtor and its estate, together with the proceeds thereof (the "Lender Collateral").

4. Debtor waives any rights under Bankruptcy Code Section 506(c) to surcharge Lender's prepetition collateral and the Lender Collateral.

5. The Lender Adequate Protection Liens on the Lender Collateral shall have the same priority as the Lender's lien on the Debtor's property as existed on the Petition Date.

6. The Adequate Protection Lien shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in this Chapter 11 case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of this Chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Case").

7. The Lender Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the chapter 11 case or any Successor Case, or upon the dismissal of this Chapter 11 case or Successor Case. The Lender Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code in any Successor Case. The Lender Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to

subordination, impairment or avoidance, for all purposes in this Chapter 11 case and any Successor Case.

8. Debtor shall establish and maintain its Debtor-in-Possession Accounts with Integrity Bank, ssb, ("Integrity Bank") and the proceeds from Lender's Collateral and its pre-petition collateral shall be deposited thereto and be subject to the Lender's Liens granted in this order without the necessity for any UCC filings or control agreements. Integrity Bank has agreed and will open debtor-in-possession account(s) for the Debtor.

9. Absent agreement from the Lender or as otherwise ordered by the Court following a hearing upon adequate notice to the Lender, the Debtor shall be prohibited from any further use of Cash Collateral except as set forth in this Order.

10. This Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, and priority of the Lender Adequate Protection Liens without the necessity of obtaining, filing or recording any financing statement, mortgage notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) the Lender Adequate Protection Liens, or to entitle the Lender to the priorities granted herein.

11. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

12. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding

upon and inure to the benefit of the Debtor, the Lender, all other creditors of the Debtor, any statutory committee or any other Court-appointed committee appointed in this Chapter 11 case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 case, any Successor Case, or upon dismissal of this Chapter 11 case or Successor Case. In the event of any conflict between the provisions of this Order and the loan documents evidencing the prepetition loans by Lender to the Debtor and the liens granted to Lender or any other order, the provisions of this Order shall govern and control. Any payments to be made under any order shall be made in accordance with this Order and the Budget.

13. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (b) dismissing this Chapter 11 case or any Successor Case; or (c) pursuant to which this Court abstains from hearing any of this Chapter 11 case or Successor Case.

14. Upon the occurrence of any of the following events, the Debtor's authority to use Cash Collateral under this order shall terminate automatically:

    a. Any party obtains relief from the stay to enforce a lien against any collateral of the Lender;

    b. Any landlord of any operating entity of the Debtor (the "Landord"), obtains relief from the stay, or an event occurs pursuant to which the stay against the Landlord terminates automatically; or

    c. The Debtor, or any operating entity of the Debtor, loses the right to the use or

occupancy of the premises it currently leases from the Landlord for the operation of its business that adversely affects the operations of the Debtor.

15. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16. The Lender shall be entitled to take all reasonable action to confirm the existence, viability or collectability of all accounts receivable or other Cash Collateral of the Debtor through audit, direct verification with account debtors of the Debtor or any other means the Lender determines is reasonable and necessary to verify the Debtor's existing accounts receivable, other Cash Collateral or any accounts receivable which may come into existence following the entry of this Order.

17. The Debtor shall provide a report to the Creditors as listed in the Motion showing the amounts spent in each category.

18. This order is without prejudice to the Lender's right to seek further adequate protection or relief from the stay. This Order is without prejudice of the Debtor to seek additional amounts for its budgets, as needed. The Debtor and the Lender may agree in writing to changes to the Budget without further order of this Court.

19. A final hearing on the use of cash collateral shall be held on 4/18, 2017, at 4:00 o'clock p.m. in Courtroom 404, Federal Courthouse Houston, 515 Rusk Ave., Houston, Texas 77002.

Dated: 3-28, 2017

Marvin Isgur
United States Bankruptcy Judge

Approved:

*/s/ Reese W. Baker*
Reese W. Baker
Attorney for Debtor, Mothership Ventures, LLC


/s/ Michael J. Smith
Michael J. Smith
Texas Bar No. 18650880
Federal I.D. 2588
Chernosky Smith Ressling & Smith, PLLC
4646 Wild Indigo, Suite 110
Houston, TX 77027
(713) 800-8608
(713) 622 1026 (Fax)
msmith@csrslaw.com
COUNSEL FOR INTEGRITY BANK, ssb

|  | Week 1 (3/28 - 4/3) | | | Week 2 (4/4 - 4/10) | | |
|---|---|---|---|---|---|---|
|  | Hunky Dory | | Bernadine's |  | Hunky Dory | Bernadine's |
| **Deposits** | | | | **Deposits** | | |
| Sales | $ | 50,000.00 | $ 60,000.00 | Sales | $ 50,000.00 | $ 60,000.00 |
| Tips | $ | 10,000.00 | $ 12,000.00 | Tips | $ 10,000.00 | $ 12,000.00 |
| Sales Tax | $ | 4,125.00 | $ 4,950.00 | Sales Tax | $ 4,125.00 | $ 4,950.00 |
| **Gross Deposits** | $ | 64,125.00 | $ 76,950.00 | Deposits | $ 64,125.00 | $ 76,950.00 |
| **Expenses** | | | | **Expenses** | | |
| Food Purchases | $ | 7,500.00 | $ 12,000.00 | Purchases | $ 7,500.00 | $ 12,000.00 |
| Alcohol Purchases | $ | 3,500.00 | $ 5,000.00 | Purchases | $ 3,500.00 | $ 5,000.00 |
| Bev Tax | $ | 1,239.50 | $ 1,326.60 | Bev Tax | $ 1,239.50 | $ 1,326.60 |
| Sales Tax | $ | 4,125.00 | $ 4,950.00 | Sales Tax | $ 4,125.00 | $ 4,950.00 |
| Labor | $ | 13,500.00 | $ 20,000.00 | Labor | $ 13,500.00 | $ 20,000.00 |
| Tips | $ | 10,000.00 | $ 12,000.00 | Tips | $ 10,000.00 | $ 12,000.00 |
| Rent | $ | 5,670.00 | $ 5,900.00 | Rent | $ 5,670.00 | $ 5,900.00 |
| Utilities | $ | 1,562.00 | $ 1,562.00 | Utilities | $ 1,562.00 | $ 1,562.00 |
| Other Operating Expense* | $ | 6,500.00 | $ 6,500.00 | Operating | $ 6,500.00 | $ 6,500.00 |
| ~~Management Fees~~ | $ | ~~2,000.00~~ | $ ~~2,000.00~~ | ~~Fees~~ | $ ~~2,000.00~~ | $ ~~2,000.00~~ |
| Misc Emergency Fund | $ | 3,000.00 | $ 3,000.00 | Emergency | $ 3,000.00 | $ 3,000.00 |
| **Total Expense** | $ | 58,596.50 | $ 74,238.60 | Expense | $ 58,596.50 | $ 74,238.60 |

*Expenses for linens, trash, cleaning vent hoods, insurance, other misc expenses